UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-020-TBR

BEN COMER and
DAVID COUNCIL,                                                                   PLAINTIFFS

v.

MCCRACKEN COUNTY DETENTION CENTER, *et al.*                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant McCracken County Detention Center's ("MCDC") Motion to Dismiss, [R. 12], and Defendant Tonya Ray's Motion for Summary Judgment, [R. 16]. Fully briefed, both motions are ripe for adjudication. For the following reasons, MCDC's Motion to Dismiss, [R. 12], is GRANTED and Ray's Motion for Summary Judgment, [R. 16], is DENIED.

**BACKGROUND**

The motions before the Court arise out of the Plaintiffs' injuries at MCDC that Plaintiffs claim are a result of a group inmates that attack other inmates at the request of Deputy Jailer Benjamin Green. [R. 6 at 3 (Amended Complaint).]

**A. Plaintiff David Council**

Plaintiffs allege that Council was incarcerated on or about September 20, 2016, and in October of 2016, he was attacked by four men. [R. 6 at 4.] As a result of the attack, Plaintiffs claim that Council "lost a tooth, developed several knots on his head, and suffered a probable broken jaw that made him unable to open his mouth or consume anything other than liquids for several weeks." [*Id*.] Plaintiffs state that he requested medical attention, but "was only allowed to

1

see a nurse who briefly applied a cold pack then denied further treatment." [*Id*.] Plaintiffs recall that Council was then placed in the protective custody unit to prevent further attacks, which is where Council purports meeting Comer—who was also in protective custody due to attacks from other inmates. [*Id*.] Plaintiffs contend that Council spoke to a chaplain about "Mr. Comer's condition," and he told the chaplain that "someone had to stop Defendants from causing or permitting unprovoked attacks on inmates." [*Id*.] Soon thereafter,[1] Plaintiffs state that a guard ordered Council to be moved back to general population, and when Council objected, stating "you know what will happen to us there," the guard "laughed and said [Council] should have thought of that earlier." [*Id*.] Plaintiffs claim that approximately nineteen inmates were moved from protective custody to general population that night, and several of them, including Council, were immediately attacked. [*Id*. at 5.] Furthermore, the attack on Council allegedly occurred in plain view of the guards, who did not assist him even though he suffered a broken tooth. [*Id*.] Plaintiffs state that after the guard change sixteen hours later, Council ran out of his cell after an inmate told him he was about to be killed, and he asked the guard for protection. [*Id*.] Allegedly, the guard only responded "Congratulations, you made it longer than anyone else." [*Id*.]

**B. Plaintiff Ben Comer**

On or about February 3, 2017, Comer was arrested and taken to MCDC, where the booking deputy allegedly told Green not to assign Comer to Unit 9 because "the last six white inmates placed in that Unit had been physically attacked." [*Id*. at 6.] However, Green allegedly rejected this suggestion, stating "no, I want to see how he handles it." [*Id*.] Plaintiffs contend that applicable regulations and/or policy bar "placing an individual who had not yet been convicted of a crime," such as Mr. Comer, "with convicted inmates," such as the inmates residing in Unit 9. [*Id*.] Moreover, Plaintiffs claim that "[a]pplicable regulations and/or policy barred placing

---
[1] Plaintiffs allege that Council spoke to this chaplain between February 16 and 22 of 2017. [*Id*. at 4.]

medium-risk inmates," like Comer, "with maximum security offenders," like the inmates in Unit 9. [*Id.*][2]

Plaintiffs estimate that "[a]fter approximately an hour in the cell, Mr. Comer was attacked by multiple other inmates who punched him, hit him with a plastic meal tray that had been left in the cell after the eating period, and stomped on his head repeatedly." [*Id.*] Allegedly, the attack was visible to one or more deputy jailers, but continued for several minutes without any sort of intervention from jail staff. [*Id.*] Plaintiffs contend that Comer suffered serious injuries from the attack, "including a crushed nose bridge, partially detached left retina, five broken teeth, and a concussion, among other injuries." [*Id.* at 7.] Plaintiffs state that Comer asked for medical attention, "but was only placed in the cell for intoxicated inmates and left there by himself without medical attention until he began vomiting blood." [*Id.*] It was at this point that "Comer was transported to a hospital where he was given stitches, a wrist splint, a knee brace, medication, and advised to see an ENT specialist." [*Id.*] Plaintiffs state that Comer has subsequently been billed for his treatment by the hospital. [*Id.*] Allegedly, Comer was not permitted to leave the detention center for a nose surgery, and he still requires surgery on his nose and a follow up appointment for his eye. [*Id.*]

### C. Procedural History

On January 26, 2018, Plaintiffs filed a complaint against Defendants, [R. 1], which was amended on February 2, 2018, [R. 6]. On February 19, 2018, Defendant MCDC filed a Motion to Dismiss, [R. 12]. On March 26, 2018, Defendant Ray filed a Motion for Summary Judgment, [R. 16]. Both motions are currently before the Court.

**DISCUSSION**

---

[2] Plaintiffs imply that Comer further stood out from the crowd in Unit 9 because "inmates in Unit 9 were dressed in red because they were maximum security violent offenders," but "Mr. Comer was dressed in orange because he was only a medium-risk inmate." [*Id.* at 6.]

There is currently before the Court a Motion to Dismiss filed by Defendant MCDC, [R.12], and a Motion for Summary Judgment filed by Defendant Ray, [R. 16]. The Court will address each motion according to the appropriate standard of review.

I.  **MCDC Motion to Dismiss**

A. **Legal Standard**

Although MCDC does not cite a Federal Rule of Procedure under which it brings its Motion to Dismiss, the Court will assume from the context and language of the briefing that it is Federal Rule of Procedure 12(b)(6).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc.*, 552 F.3d at 434 (citing *Great Lakes Steel*, 716 F.2d at 1105). "The court need not, however, accept unwarranted factual inferences." *Id*. (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the

complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief."
*Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

**B. Discussion**

MCDC argues that the Court should dismiss Plaintiffs' claims against it because it is not an entity subject to suit. [R. 12 at 1 (MCDC Motion to Dismiss).] Plaintiffs agree that MCDC is not an entity subject to suit but argue that the Court "must dismiss Plaintiffs' claim without prejudice and with leave to assert their claims against McCracken County." [R. 15 at 1 (Plaintiffs Response).] MCDC retorts that any amendment to supplement the Complaint would be futile due to the governing statutes of limitations. [R. 17 at 2-3 (MCDC Reply).] The Court finds that Plaintiffs claims against MCDC should be dismissed.

Although both parties seem to agree that MCDC is not an entity subject to suit, Plaintiffs argue that the Court should allow them to file an amended complaint naming McCracken County as a defendant. [R. 15 at 2.] In support of this argument, Plaintiffs cite *Ferguson v. Dallas County Jail*, a case out of the Northern District of Texas. [*Id*. (citing *Ferguson v. Dallas Cty. Jail*, No. 3:96-CV-2939-D, 1997 WL 86459, at *1 (N.D. Tex. Feb. 26, 1997).] It appears that Plaintiffs mention this particular case because it was cited by the Western District of Kentucky in *Blay v. Daviess County Detention Center*, No. 4:07-CV-P69-M, 2007 WL 2809765, at *1 (W.D. Ky. Sept. 25, 2007). However, in *Blay*, the court dismissed the claims against the Davies County Detention Center without allowing the plaintiff file an amended complaint. No. 4:07-CV-P69-M, 2007 WL 2809765, at *1. Like the matter at hand, the court dismissed the claims due to the fact that "the detention center is not an entity subject to suit." *Id*. (citing *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) and *Ferguson,* No. 3:96–CV–2939–D, 1997 WL 86459, at *1).

5

Furthermore, the explanatory parenthetical following the *Blay* court's citation of *Ferguson* reveals that the court cited *Ferguson* for the conclusion that a jail is "not a separate entity subject to suit," not necessarily for the remedy of allowing the plaintiff to file an amended complaint. *Id.*[3] Therefore, the Court will follow the precedent of this district rather than that of the Northern District of Texas.

Additionally, even if this action were brought against McCracken County, it would not survive. When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)

---

[3] Specifically, that portion of *Blay* reads: "Upon review, the Court will dismiss the claims against the Daviess County Detention Center, as the detention center is not an entity subject to suit. *See Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994) (noting that the county police department is not an entity which may be sued); *Ferguson v. Dallas County Jail,* No. 3:96–CV–2939–D, 1997 WL 86459, at *1 (N.D. Tex. Feb. 26, 1997) (noting that the county jail lacks separate jural existence and is not a separate entity subject to suit)." *Blay*, No. 4:07CV-P69-M, 2007 WL 2809765, at *1.

(citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). Here, none of the allegations in the Complaint indicate that any alleged wrongdoing or injury occurred as a result of a policy or custom implemented or endorsed by McCracken County. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). Accordingly, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim.

Aside from § 1983, the Plaintiffs also bring a "common-law failure to train" claim against MCDC. [R. 6 at 1.] "'When assessing whether defendants are entitled to immunity from state law tort liability, the court must apply Kentucky rules of sovereign immunity.' *Ivey v. McCreary Cnty. Fiscal Court*, 939 F. Supp. 2d 762, 765 (E.D. Ky. 2013). Under Kentucky law, county governments are protected by sovereign immunity. *Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 163 (Ky. 2003). And absent a legislative waiver, county governments cannot be held vicariously liable for the ministerial acts of their employees." *Cordle v. Clark*, No. CV 6: 17-23-DCR, 2018 WL 988075, at *8 (E.D. Ky. Feb. 20, 2018). Even if the Court construes the claim as against McCracken County, Plaintiffs do not argue that Kentucky's legislature has waived McCracken County's sovereign immunity. Thus, Plaintiffs' claim must fail. *See Shepherd v. Floyd Cty., Kentucky*, 128 F. Supp. 3d 976, 978 (E.D. Ky. 2015) (holding that Floyd County was immune from inmate's state tort claims under sovereign immunity absent legislative waiver).

Therefore, MCDC's Motion to Dismiss the claims against it, [R.12], is GRANTED, and the Court denies leave for Plaintiffs to assert their claims against McCracken County.

II.     **Ray Motion for Summary Judgment**

### A. Legal Standard

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the defendant must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the plaintiff's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the defendant satisfies his or her burden of production, the plaintiff "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### B. Discussion

In moving for summary judgment, Ray argues that, at the time of the Plaintiffs' injuries, she was a Booking Sergeant, not the McCracken County Jailer, and she was not working the

night shift, the period of time when the incidents occurred, in February of 2017. [R. 16-1 at 4 (Ray Motion for Summary Judgment).] Moreover, Ray contends that the allegations in this case ultimately concern "the classification or overriding the classification of inmates," and she did not have the authority to train or supervise any deputy jailer over such a task. [*Id*.] Plaintiffs respond that Ray's supervisory authority over deputy jailers in booking inmates makes her responsible for the harm that befell the Plaintiffs. [R. 18 at 2 (Plaintiffs Response).] Furthermore, Plaintiffs assert that they should be given an opportunity to take discovery on the nature of Ray's duties and responsibilities before the Court considers a motion for summary judgment on the matter. [*Id*.] Ray retorts that since Council's rights were not violated during booking, nor was she present, and she did not have the power to override the allegedly inappropriate booking of Comer, she is not responsible for the deprivation of the rights of the Defendants. [R. 19 at 2-4 (Ray Reply).]

At this early stage in the litigation, the Court finds Ray's Motion for Summary Judgement to be premature. Cases in which summary judgment is granted prior to discovery are "extraordinary and not the norm." *Moore v. Shelby Cty., Kentucky*, 718 F. App'x 315, 320 (6th Cir. 2017). This is because "[a] summary judgment determination requires an inquiry into 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law,'" and "[c]ommon sense dictates that before a district court tests a party's evidence, the party should have the opportunity to develop and discover the evidence." *Id*. Here, the only piece of evidence before the Court concerning Ray's authority at the time of the incident is a short affidavit from Ray stating that she only had authority over "booking officers," not "classification" or "deputy jailers in their decisions concerning classification or overriding thereof." [R. 16-2.] This still leaves unanswered

9

Plaintiffs' claim that Ray generally supervised Green, who allegedly ordered inmates to attack other inmates.[4] Furthermore, despite Ray's assurances, her involvement in training and supervising officers at MCDC, and its relation to this case, remain unclear. Thus, more discovery is required before the Court can adequately decide whether the evidence presents a sufficient disagreement to require submission to a jury. Ray's Motion for Summary Judgment, [R. 16], is DENIED.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1) Defendant McCracken County Detention Center's Motion to Dismiss, [R. 12], is **GRANTED**. All Claims against McCracken County Detention Center are DISMISSED WITH PREJUDICE. The Court denies leave for Plaintiffs to assert their claims against McCracken County.

(2) Defendant Tonya Ray's Motion for Summary Judgment, [R. 16], is **DENIED**.

**IT IS SO ORDERED**.

cc: Counsel of Record

---

[4] [*See* R. 6 at 3.]